IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| SWISSDIGITAL USA CO., LTD, a Delaware company,<br><br>    Plaintiff,<br>v.<br><br>WENGER, S.A., a Switzerland company,<br><br>    Defendant. | MISC. ACTION NO:<br><br>**NON-PARTY GROUP III INTERNATIONAL, INC. 'S EXPEDITED MOTION TO QUASH SUBPOENA FOR DEPOSITION AND DOCUMENT PRODUCTION** |

Non-Party Group III International, Inc. ("Group III"), a Florida company, by and through the undersigned, and pursuant to Federal Rule of Civil Procedure 45, hereby files this Motion seeking to quash the Subpoena to Testify at a Deposition (the "Subpoena") served by SwissDigital USA Co. LTD ("SwissDigital") in connection with the Western District of Texas litigation, styled, *SwissDigital USA Co., LTD v. Wenger, S.A.,* Civil Case No. 6:21-cv-00453-ADA-DTG (W.D. Tx.). For all the reasons set forth herein, Group III respectfully requests the Court grant this Motion to Quash and award this non-party fees and costs it has incurred in responding to the subpoena and moving to quash. Pursuant to Local Rule 7.1(d)(2), Group III requests a ruling by no later than December 26, 2022, as the current compliance date with the Subpoena is January 4, 2023 for production and January 10, 2023 for a deposition, which, in light of the impending holidays, affords Group III minimal time to comply, should compliance become necessary following the adjudication of the instant Motion. Indeed, if this Court orders compliance, Group III requests that the compliance date of the subpoena be extended by at least thirty (30) days.

## INTRODUCTION

On April 30, 2021, SwissDigital, seeking to take tactical advantage of the well-known patentee friendly jurisdiction of the Western District of Texas, filed suit against the foreign entity,

Wenger, S.A., a Switzerland company. *See* [**Exhibit A**, Complaint]. Prior to filing suit, SwissDigital was made aware that Wenger was merely a licensor of Group III, a Florida company based in Broward County, but SwissDigital knew that inclusion of Group III into the litigation would destroy its ability to forum shop into Texas. Indeed, the Supreme Court in *TC Heartland, LLC v. Kraft Foods Group Brands, LLC*, sought to curb forum shopping in patent litigation and declared that a defendant accused of infringing, *regardless of the level of allegedly infringing activity in another jurisdiction*, may <u>only</u> be sued in "the State of incorporation" wherein the accused infringer is established. 137 S. Ct. 1514, 1517, 197 L.Ed.2d 816 (2017) (emphasis added). This decision effectively ended a plaintiff's ability to forum shop in patent infringement cases brought against domestic corporations. The only remaining loophole – which SwissDigital sought to take advantage of by selecting Texas as its forum – is that *TC Heartland* stopped short of delineating any impact its ruling would have on patent infringement suits *against foreign entities*, such as Wenger. *Id*. at 1520, n.2 ("The parties dispute the implications of petitioner's argument for foreign corporations. We do not here address that question…").

Make no mistake, however, no precedent exists that would allow this open question to permit a domestic company to be hauled into a patent infringement lawsuit in a jurisdiction other than its "State of incorporation" merely by a patentee's inclusion of a foreign co-defendant into the case. In other words, inclusion of a domestic company – *like Group III* – into a lawsuit filed against a foreign company – *like that filed by SwissDigital in Texas against Wenger* – would inevitably result in the dismissal and/or transfer of the case to the proper *TC Heartland* mandated forum, which, *in this instance*, would have been the Southern District of Florida. For the reasons stated below, however, SwissDigital now seeks to have its proverbial cake, and eat it too, by taking improper and unfair advantage of Group III in a forum that would be inconsistent with *TC*

*Heartland's* enunciation. Worse, and as described below, **in order to maintain its action in Texas, SwissDigital repeatedly insisted that it did not need any information from Group III**, and, *instead*, would only rely on information from Wenger. Clearly, such representations were false and made to Wenger, as well as to the district court and the Federal Circuit Court of Appeals, all with the clear intention to mislead said judicial bodies into believing that Group III would not have any involvement in the litigation, thereby removing application and the implications of *TC Heartland* here. SwissDigital should not be allowed to sidestep and ignore its prior judicial representations which, had they not been made, would have undoubtedly forced the litigation out of Texas and into the Southern District of Florida. For the reasons that follow, SwissDigital's subpoena is improper and must be quashed.

## I. SWISSDIGITAL IS ESTOPPED FROM SEEKING INFORMATION FROM GROUP III

Not only was SwissDigital keenly aware of Group III's incorporation status in Florida, but, shortly after it intentionally forum shopped and filed suit in Texas, Wenger reminded SwissDigital that Wenger did not manufacture, market, or sell any of the allegedly infringing products at issue in the litigation. At every turn in the litigation, Wenger reexplained that it was merely a licensor of the SwissGear brand (*i.e.,* licensor of the registered trademark that was placed on the accused products), and that Group III, incorporated and based in South Florida, was the party that should have been included in the lawsuit as it was Group III — *not Wenger* — who actually designed, manufactured, marketed and sold all of the products accused of infringing SwissDigital's patent in suit, and it was thus Group III that had all information and witnesses in its possession that would be needed by SwissDigital to prosecute its case. *See* [**Composite Exhibit B**, a compilation of a sampling of pleadings filed by Wenger in the Texas litigation advising SwissDigital that Group III

should be included in the suit]. Realizing, however, that Group III's inclusion into the lawsuit would destroy its ability to maintain suit in the Western District of Texas, SwissDigital knowingly and intentionally declined to bring Group III into the litigation.

Remaining convinced that SwissDigital should have included Group III in the case, Wenger filed a motion to dismiss and to transfer the case to the Southern District of Florida. *See* [**Exhibit C**, Motion to Dismiss and Transfer]. The primary basis of said effort was the argument that Group III was incorporated in Florida, headquartered in Broward County, and all relevant documents and witnesses were in Group III's possession in that jurisdiction. *See id*. SwissDigital, however, doubled down on its tactical decision to file in the Western District of Texas, and vigorously opposed Wenger's requested transfer. *See, e.g.,* [**Exhibit D**, Opposition to Motion to Dismiss and Transfer]. SwissDigital opposed Wenger's request despite undoubtedly realizing that Group III was the actual putative accused infringer, and that it was Group III who possessed all relevant information for it to prosecute its case against Wenger. But, SwissDigital nonetheless fought Wenger's request as, had it not, the lawsuit would have undoubtedly been transferred out of its handpicked venue.

Recognizing the steepness of the climb to overcome Wenger's venue challenge, SwissDigital even went so far as to represent and commit to the district court that it **would not seek any discovery from Group III** if the case was allowed to remain in the Western District of Texas. SwissDigital, instead, expressly promised to base its entire case on information in Wenger's possession. *See, e.g.,* [**Exhibit E**, Quotes From Swissdigital]. Indeed, in its Order denying Wenger's Motion to Transfer, the district court noted that "**SwissDigital [went] so far as to state that it will rely only on documents in Wenger's possession, and that Group III is irrelevant.**" *See* [**Exhibit F**, Court's Order Denying Transfer, at 9-10] [emphasis added]. The district court also

noted SwissDigital's express statement on "**the record that it is not relying on Group III to prove its infringement case and is solely relying on Wenger's documents**." *Id*. [emphasis added]. Based on the foregoing commitments and representations, the district court denied Wenger's transfer request, finding, *in part*, that "**SwissDigital is not relying on Group III witnesses or documents to support its infringement claims against Wenger.**" *Id*. [emphasis added].

Wenger, convinced that Group III should be involved in this litigation, next filed a petition for writ of mandamus with the Federal Circuit Court of Appeals, seeking to overrule the district court's transfer denial. The Federal Circuit regularly grants mandamus requests to transfer cases out of the Western District of Texas on improperly filed patent infringement cases, so this was the next logical step for Wenger in seeking to overcome SwissDigital's improper strategic forum shopping. *See, In re Apple Inc.,* 979 F.3d 1332, 1347 (Fed. Cir. 2020); *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1381 (Fed. Cir. 2021), cert. denied sub nom. *Ikorongo Texas LLC v. Samsung Elecs. Co.*, 212 L. Ed. 2d 540, 142 S. Ct. 1445 (2022); *In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1214 (Fed. Cir. 2022). Recognizing the risk posed by Federal Circuit mandamus review, SwissDigital dug in deeper on its position, and repeated that it did not need any discovery from Group III to maintain its lawsuit against Wenger in the Western District of Texas. In fact, SwissDigital represented to the Federal Circuit that it would only rely on discovery in Wenger's possession and, based at least in part on such representation, the Federal Circuit denied the mandamus petition on September 23, 2022, concluding:

> we cannot say that the district court was plainly incorrect under the circumstances in rejecting Wenger's argument that the transferee venue would be more convenient for prospective witnesses and evidence. **SwissDigital has represented that it will rely only on sources of proof in Wenger's possession**…and has said it **will rely only on expert testimony regarding 'the characteristics and features relevant to [the accused products'] infringement**….'

*See* [**Exhibit H**, Federal Circuit's Denial of Petition] [emphasis added]. These representations made to, and accepted by, the Federal Circuit were clearly false. Now, fast forward 3-months, and the procedural posture brings the focus to the present date and the instant Motion to Quash.

As <u>predicated</u>, <u>forecasted</u> and <u>repeatedly</u> warned by Wenger, SwissDigital has finally conceded – *after approximately eighteen (18) months of discovery and on the heels of a trial date in May 2023 in the Western District of Texas* – that it needs extensive discovery from Group III. And, it is no "coincidence" that this sudden change of course by SwissDigital has occurred just weeks <u>after</u> the Federal Circuit adopted SwissDigital's commitment not to seek <u>any</u> discovery from Group III in this case, and all appeal and rehearing timelines have passed. The timing of this maneuver by SwissDigital transparently exposes SwissDigital's motivation from the onset – *to wit*: do what it takes to keep the case venued in the Western District of Texas, and then change course when the venue battle was procedurally over. Such an "end justifies the means" tactical philosophy should not be permitted to stand.

SwissDigital has now served Group III with a subpoena which, by agreement of counsel, a response would tentatively be due (*should one become required*) no later than January 4, 2023, with a potential deposition (*if ordered by this Court*) tentatively scheduled for January 10, 2023. Should this Court order compliance, however, Group III requests at least an additional 30-days to so comply given the late requests, voluminous nature of the same, and the impending holidays. As explored in more detail hereinbelow, the subpoena casts a wide net of discovery requests seeking production of potentially thousands of pages of documents from Group III, many which contain highly sensitive confidential business information. *See* [**Exhibit I**, SwissDigital Subpoena]. Best described, and setting aside for now the objectional nature of many of the requests themselves, the subpoena is akin and tantamount to written discovery that a litigant would serve at the onset of a

case on its *party opponent*. Here, however, SwissDigital intentionally elected that Group III would *not become a party* (in order to take unfair advantage of the *TC Heartland* loophole), and SwissDigital voluntarily made its decision with its *eyes wide opened* through constant warnings by Wenger that this case should be transferred to the Southern District of Florida so that Group III could be involved.

Now, with no procedural ability for the litigation to be properly transferred to the Southern District of Florida or for Group III to be afforded proper due process at an eventual trial in Texas, SwissDigital seeks a wide gamut of discovery from Group III, *to use against Group III's interest*. In other words, SwissDigital strategically chose to wait until the end of the litigation, and then to turn to Group III once the venue challenge was over, the extended discovery period was about to close (on January 13, 2023), and on the litigation sat on the heels of trial's commencement (on May 18, 2023), knowing Group III would be severely prejudiced as it would not have the ability to enter the case at this late stage, and knowing that transfer, *at this point*, would be impossible. SwissDigital tactically waited until the end, in hopes of securing all the information needed from Group III while, *at the same time*, preserving its forum shopped patentee friendly venue. Such gamesmanship should not be tolerated, and SwissDigital should be estopped from seeking any discovery from Group III at all in this instance. Allowing SwissDigital to turn 180º with a complete about-face on express representations and commitments it has made throughout the litigation to multiple courts and to Wenger would serve to promote gamesmanship and deception, and allow litigants to overcome the Supreme Court's clear *TC Heartland* mandate that sought to curb forum shopping in patent cases. Simply put, SwissDigital should be judicially estopped at this juncture from seeking any discovery from Group III; anything less would reward SwissDigital for its deceptive gamesmanship tactical maneuvering throughout the litigation, and unfairly prejudice

Group III by forcing it to provide discovery in a case that it is being accused of infringing, without any ability to be afforded due process at an eventual trial. Again, SwissDigital convinced the district court and Federal Circuit that Group III was "irrelevant" and that discovery would not be sought from Group III. SwissDigital made such representations to keep the case in Texas. They should not now be permitted to change course.

Indeed, the purpose of judicial estoppel is "to protect the integrity of the judicial process by **prohibiting parties from changing positions according to the exigencies of the moment**." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir.2002) (emphasis added). To this end, as our Supreme Court has explained,

> **where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position**, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

*New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814, 149 L. Ed. 2d 968 (2001) (emphasis added). Judicial estoppel, therefore, serves to "**prevent[] a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase**." *Id*. (emphasis added).

Regardless of whether it is Texas or Florida law which ultimately governs the question of judicial estoppel in this instance, the law in both states are aligned. *See, e.g., NGM Ins. Co. v. Bexar Cnty., Texas*, 211 F. Supp. 3d 923, 931–32 (W.D. Tex. 2016) (Under Texas law, "for judicial estoppel to apply and prevent a party from asserting contrary positions in litigation, two requirements must be satisfied: (1) the position of the party to be estopped must be clearly inconsistent with its previous one; and (2) that party must have convinced the court to accept that previous position."); see also *In re Gosman*, 382 B.R. 826, 841 (S.D. Fla. 2007) (Under Florida law, "where a party assumes a certain position in a legal proceeding and succeeds in maintaining

that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."); *Muldrow v. Credit Bureau Collection Servs., Inc.*, No. 09-61792-CIV, 2010 WL 5393373, at *1 (S.D. Fla. Dec. 22, 2010) ("The doctrine of judicial estoppel is a common law principle which precludes a party from asserting a position in a legal proceeding inconsistent with a position taken by that party in the same or a prior litigation.").

Moreover, in Florida, district courts consider the following factors when making a determination of whether to apply judicial estoppel:

> (1) whether the present position is 'clearly inconsistent' with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party.

*Alvarez v. Royal Atl. Devs., Inc.*, 854 F. Supp. 2d 1219, 1226–27 (S.D. Fla. 2011) (internal citations omitted). All of the foregoing weigh decisively towards applying the doctrine of judicial estoppel.

First, there can be no serious doubt that SwissDigital's present position is irrefutably *inconsistent and directly at odds* with its original position that it **would not rely on <u>any</u> documents or information from Group III**. Indeed, prior to its subpoena, "**SwissDigital [went] so far as to state that it will rely <u>only</u> on documents in Wenger's possession, and that <u>Group III is irrelevant</u>.**" *See* [**Exhibit F**, Court's Order Denying Transfer, at 9-10] [emphasis added]. Second, statements like the foregoing made by SwissDigital served to convince the district court <u>and</u> Federal Circuit that Group III was indeed "**irrelevant**" as both courts relied upon said representations to reject Wenger's request that the litigation be transferred to the Southern District of Florida. SwissDigital's sudden insistence that it needs extensive discovery from Group III **directly contradicts** all of the assertions made by it, and adopted by both courts, which, *at an*

*absolute minimum*, "creates the perception that [the Texas district court and the Federal Circuit] was misled." *Alvarez*, 854 F. Supp. 2d at 1226–27. Based on the foregoing realities, there is no doubt that Group III would be severely prejudiced (as would Wenger), whereas SwissDigital "would derive an unfair advantage" against both if SwissDigital were allowed to suddenly reverse course. SwissDigital took the initial position in the litigation to block Wenger's efforts to transfer the case to the Southern District of Florida, which would have permitted Group III's participation in the case. Group III, a Florida entity with no jurisdictional ties to Texas, would thus essentially become "the" target of litigation pending in Texas *without being afforded due process* to be able to properly defend itself as all patent pre-trial deadlines (such as claims construction, infringement contentions, invalidity contentions, etc.) are long closed, discovery is set to close, and trial commences in May 2023. The unfair prejudice to Group III would be enormous, and the unfair advantage would be enormous to SwissDigital. Accordingly, SwissDigital should be estopped at this juncture from changing course, and its subpoena to Group III should be quashed.

    II.    <u>**ALTERNATIVELY, THE SUBPOENA IS OVERLY BROAD, UNDULY BURDENSOME, IRRELEVANT AND REQUESTS HIGHLY CONFIDENTIAL INFORMATION**</u>

Group III is hesitant to even address an alternative outcome as it strongly believes that judicial estoppel should (and *must* in this instance) serve to bar SwissDigital's subpoena in its entirety; but, inasmuch as a piecemeal approach in a Motion to Quash would be inappropriate, Group III would be remiss to not also address the objectionable nature of SwissDigital's subpoena on independent grounds. As explained in more detail hereinbelow, the document requests and deposition topics enumerated by SwissDigital are excessively overbroad, would be unduly burdensome for Group III to comply with (*especially in the short timeframe allotted in the midst of the December holidays*), are vague and ambiguous in many respects, irrelevant, and, *in some*

*instances*, seek highly sensitive proprietary business information and/or would even invade the attorney client privilege as presently drafted. The requests seek information that is highly sensitive, including competitive financial information and trade secret information, without any protections in place. (Without limitation See Request Nos. 9, 10, 11, and 15).   The disclosure of the information, documents and things would result in irreparable harm to Group III. This reason alone should preclude SwissDigital from using the federal court system to gain competitive information and documents on a non-party, who it expressly has stated it would not seek such information.

An affidavit signed by Armand Vezina, Executive Vice President of Operation for Group III, is attached hereto as **Exhibit G** enumerating how the requests are overly broad and unduly burdensome. *See I'm A Little Teacup, Corp. v. Pretty Pet Eyes, Inc.,* No. 08-60495-CIV, 2008 WL 11411252, at *2 (S.D. Fla. Sept. 16, 2008) (objecting party must show "how each [discovery request] is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden"); *See* [**Exhibit G**, Affidavit of Armand Vezina]. To this end, as this Court recently found in another matter:

> Federal Rule of Civil Procedure 45(d)(3) specifies when a court should, or must, quash a subpoena to a third-party. The applicable legal standard depends on the nature of the documents called for by the subpoena. As relevant here, a Court must quash or modify a subpoena that "(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv).… The objecting party bears the burden of establishing that (1) the requested materials are privileged, otherwise legally protected, or confidential research, development, or commercial information or that (2) compliance would entail an undue burden.… Rule 45(d)(3) explicitly places the burden on the party serving the subpoena to show a substantial need for the materials that cannot otherwise be met without undue hardship.

*In re Subpoena Dated June 18, 2020*, No. 20-MC-82327-BER, 2021 WL 7540812, at *3 (S.D. Fla. Apr. 14, 2021). Moreover, a court can limit discovery when the information "sought is unreasonably cumulative or duplicative, obtainable from some other source that is more

convenient, less burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs the likely benefit." *Kaplan v. Lappin*, No. 10-80227-CIV, 2011 WL 13225151, at *1 (S.D. Fla. May 9, 2011). For the reasons that follow, SwissDigital's requests for documents and deposition topics, *even if proper in the first instance*, are wholly objectionable. The specific objections and concerns are as follows:

### III.  SWISSDIGITAL'S DEFINITIONS AND INSTRUCTIONS WITHIN THE SUBPOENA ARE OBJECTIONABLE

The non-party subpoena falls on its face from the start with objectionable and poorly defined, or in some instances undefined, terms. Definition #1 defines "You," "Your," or "Group III" to expressly include "attorneys… acting on behalf of" Group III. This definition explicitly requests information that is protected by Attorney-Client Privilege and is, thus, improper and objectionable as SwissDigital cannot seek privileged information.

Definition #2 defined "Wenger," "Wenger S.A.," Wenger Licensing S.A.," or "Defendant" as one or more people or entities who are subject to the direction and/or control of Defendant in that litigation. To the extent this definition includes Group III due to its license agreement with Wenger, such inclusion would be improper as Group III does not have control over anything in Wenger's custody.

Definition #5 defines "Defendant's Trademarks" as all trademarks registered to Wenger. While Group III is aware of the trademark it licenses from Wenger, Group III does not know, would not know, and should not be required to investigate and determine information on **"all"** trademarks registered to Wenger. Moreover, even as it concerns the trademark licensed by Wenger to Group III, it is improper to require Group III to produce all material or information relating to

said trademark as Group III is merely a licensee, most of such material would be in the possession of Wenger, and Group III does not have control over Wenger.

Definition #12 defines "Accused Products," but the definition is so overbroad and vague that Group III cannot determine its meaning with any reasonable certainty; indeed, Group III is not involved in the Texas litigation and, as such, is not aware of the complete universe of what SwissDigital may be consider to fall within the realm of an "Accused Product." Moreover, the definition of the "Accused Product(s)" as goods sold "at any time," is overly broad because it is not limited in time or scope. The definition also appears to include products that SwissDigital accuses of infringement, but does not define these products and does not attach any documents that would allow Group III to get an understanding or scope of these products.

Definitions #6, #7, #8, #9, and #10 all refer to Patents which are not attached as exhibits to the Subpoena, and Group III cannot know the scope of such documents, nor is it required to go hunting and finding such documents.

Definition # 25 defines "USB outlet power ready port" as any substantially similar feature to a "'USB outlet power ready port for charging on the go' and/or 'USB power port'". This definition is vague and ambiguous and not clearly identified. There are continual definitional problems throughout the Definition section with the term USB port, which is undefined but used in the definition for "accused Product(s)", as compared to this Definition #25. The lack of clarity of this definition is compounded by the further vague and objectionable Definition #26, defining "USB Power Ready Collection" as containing any substantially similar feature to the products designated as part of the USB Power Ready Collection. It is unclear whether a distinction was intended between these particular definitions. (Vezina Affidavit ¶¶ 10, 19, 20, 22).All of these

definitional problems could have been resolved through an amended subpoena, but SwissDigital refused.

A clear review of the instructions and the underlying documents requests, and deposition topics, reveals that there is <u>no time limitation</u>, thus creating a fully overbroad and entirely burdensome requirement for Group III to search for every single document and/or thing (samples, prototypes, products, etc.), analyze and review them all, produce them all and then discuss in a deposition with respect to each during the entire lifetime of the company. The definitions and instructions lay the groundwork for the troubles ahead.

### IV. THE DOCUMENT REQUESTS AND DEPOSITION TOPICS WITHIN THE SUBPOENA

There are 19 document requests and 31 deposition topic requests in the Non-party subpoena. Given the overlapping and duplicative nature, coupled with page limitations in this motion, Group III has organized them into some general groupings, wherein the same analysis is present and applicable for the Court's review and management. A short guide of the overlap is provided as follows: (Doc #1: Topic #11); (Doc #2: Topic #12); (Doc #3: Topic #14); (Doc #4: Topic#9); (Doc #5: Topic #19); (Doc #6: Topic #16); (Doc #7: Topic #17); (Doc #8: Topic #30); (Doc #9: Topic #18); (Doc #10: Topic #15); (Doc #11: Topic #20 and #21); (Doc #12: Topic #21); (Doc #13: Topic #6, #10, #23, and #24); (Doc #14: Topic #6, #10, #23, and #24); (Doc #15: Topic #2, #3, #5, #9, and #22); (Doc #16: Topic #2, #3, #5, #9, and #22); (Doc #17: Topic #27); (Doc #19: Topic #28).

Given that context, the first major hurdle in both the document requests and the deposition topics is the "Accused Product(s)" definition problem, which necessarily extends into the burden present in requiring the production of nearly every single document or thing in the Group III

universe. The lack of limitations creates a burden that is not capable of being reasonably measured, and would likely need hundreds of hours of data/document review, collection, analysis and production, all of which could not possibly be completed in advance of the deposition deadline during the holiday season. (Vezina Affidavit ¶¶ 5, 7).

To give a true sense of the overbroad and burdensome nature of these document requests and deposition topics, Group III has almost 100 employees, and over its existence has previously employed at least another 100 different individuals. (Vezina Affidavit ¶ 6). The non-party subpoena attempts to define "Accused Products" in a manner that could include at least 100 potential current products that are in the Group III system, depending upon how the term "USB port" shown in the definition is interpreted, but not ever defined. (Vezina Affidavit ¶ 8). As a result, the overbreadth of the term "Accused Product(s)" would necessarily require Group III to search through at least its current line of products, which exceeds 1,500 (over the last 5 years). (Vezina Affidavit ¶ 9). Even more concerning though, is that since that non-party subpoena is not limited in time regarding any of the document production, Group III would be obligated to search through its entire historic records, and would therefore include a line of products that exceeds 9,500. (Vezina Affidavit ¶ 9).

The non-party subpoena also fails to attach **any document** that it specifically claims and relies upon in its definitions and for which Group III is required to understand the scope of the definitions, as follows: "Plaintiff's Complaint, Plaintiff's First Amended Complaint, Plaintiff's Preliminary Infringement Contentions, Plaintiff's Final Infringement Contentions, and exhibits attached thereto." (Vezina Affidavit ¶ 14). It is not proper and unduly burdensome for Group III to seek and find these documents, merely to understand the scope of a definition. (Vezina Affidavit ¶ 14). Group III was never provided an exhaustive list of what Swissdigital identifies as

the "Accused Products." (Vezina Affidavit ¶ 15). The definition of "Accused Products" purports to cover products sold by Wenger, which is not within the control of Group III, and as a result creates an undue burden on Group III. (Vezina Affidavit ¶ 16). None of the documents described in the "Accused Products" definition were attached as exhibits to the Non-Party Subpoena and therefore it creates an impossibility for Group III to know the scope of such definition. (Vezina Affidavit ¶ 17). Group III was also not provided any of the referenced patents, patent applications, or trademarks referenced in the definitions, and as a result, Request Nos. 13, 14 and 15, are all in capable of a response and therefore unduly burdensome to require Group III to search and find specific documents that could and should have been attached to the non-party subpoena.

As a result, Document requests 1-5, 8-12, 14-18 all suffer from the same problem and result in the similar levels of under burden and hardship for Group III to identify, collect analyze and produce. As a prime example of the overly broad request, the Court can look to Request No. 4 as a classic boilerplate catch-all, which has routinely been rejected by Courts. Document requests Nos. 1-10 all have multiple varying any inconsistent references to the some aspect of the term USB. The waxing and waning nature of ten consecutive requests, further highlights the difficulty and burden presented to non-party Group III in finding every single document that might come near the term USB. On the requests the expressly seek communications, of which would equally create such a degree of undue burden that the best estimate that Group II is able to identify at this time would result in at least the hundreds of thousands with respect to communications since 2004.

Again, based upon an attempt to narrow the actual list of Accused Products to a "USB Port" would potentially result in approximately 100 different products. As a result, supporting documentation would result in an unknown multiplier to associate documents with each product. This results in unreasonable and burdensome production requirements with respect to documents

(and their deposition topics counterpart) such as those for "quality control of the Accused Products" (No. 17), "marketing, advertising or promotion" (No. 11), "product packaging, product tags, and instructions" (No 3.) and "product manuals, specifications, instructions and any product documentation" (No. 2).

At a deeper level regarding the electronic landscape of Group III, currently Group III has over 80 active email addresses. (Vezina Affidavit ¶ 24). During a review with the Group III IT department, it was determined that it would take at least a week to even determine the total number of historic emails present in the Group III systems, due to various backups and data migration. (Vezina Affidavit ¶¶ 23-25).This process would require exhaustive technical hurdles including a de-archive process. (Id.) Such burdensome process does not even account for the additional later actual search for information contained in those emails, just so that Group III could attempt to provide responses to the requests for "communications." As a result, the burden on Group III is actually not capable of being measured at this time. Even an initial analysis of the requests would require an estimated review of at least 20 different custodians. (Vezina Affidavit ¶ 23).

Additionally, the subpoena seeks a complete production of every single aspect of the swissgear.com website. All documents and communications concerning the SWISSGEAR website at https://www.swissgear.com/ necessarily includes documents that relates back to 2014 and have continued since. The website is continually updated and therefore results, in a difficult to measure but excessive amount of data, none of which is relevant to the apparent litigation by SwissDigital. Moreover, the production of all documents and discussion of the deposition topic regarding the website would result in a massive disclosure of highly confidential and competitive information without any protection and which would result in irreparable harm. Additional irreparable harm would come in being required to disclose highly confidential information regarding the license

with Wenger (Subpoena Depo Topics 2, 3, 4, and 5). Deposition topics 13, 26, 27, 29 and 30 all cover a large swath of irrelevant and unrelated highly confidential business information for Group III. The disclosure of such information would irreparable harm and would be burdensome to find documents and information to support a witness with knowledge about each of those topics. Deposition topic 25 is in the possession and control of SwissDigitial and should not be the subject of any inquiry. Deposition Topics 1 and 31 are illogical and Group III is incapable of responding or testifying since "Attachment B" referenced in each is the same "Attachment B-Deposition Topics" creating an infinite repetitive loop.

## CONCLUSION

For the foregoing reasons, Group III respectfully requests that this Court quash the Subpoena issued by SwissDigital in this matter and requests a hearing on this matter.

## LOCAL RULE 7.1(A)(3) CERTIFICATION

Pursuant to Local Rule 7.1(A)(3), undersigned counsel for Group III certifies that his office has conferred with counsel for SWISSDIGITAL USA CO., LTD via telephone conference on November 30, 2022 and December 15, 2022, as well as multiple email exchanges throughout that entire period of time, in a good faith effort to resolve the issues raised in this motion, and that counsel for SWISSDIGITAL USA CO., LTD has indicated that they oppose the relief requested.

**Dated: December 15, 2022.**

      Respectfully submitted,

      **THE CONCEPT LAW GROUP, P.A.**
      *Attorneys for Non-Party*
      6400 North Andrews Avenue, Suite 500
      Fort Lauderdale, Florida 33309
      Telephone: 754-300-1500

By: /s/ Alexander D. Brown
Alexander D. Brown (FBN: 752665)
E-mail: Abrown@conceptlaw.com
Scott D. Smiley (FBN: 678341)
E-mail: Scott@ConceptLaw.com
Darren Spielman (FBN: 678341)
E-mail: DSpeilman@ConceptLaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, on December 15, 2022, and that a copy of all filings are being emailed concurrently herewith to all counsel listed below.

By: /s/ Alexander D. Brown
Alexander D. Brown

## SERVICE LIST

**Dariush Keyhani**
Keyhani LLC
1050 30th St. NW
Washington, DC 20007
(202) 748-8950
Fax: (202) 318-8958
Email: dkeyhani@keyhanillc.com
*Attorneys for Plaintiff*
*SWISSDIGITAL USA CO., LTD*

**Frances H. Stephenson**
Keyhani LLC
1050 30th St. Nw
Washington, DC 20007
(202) 748-8950
Fax: (202) 328-8958
Email: fstephenson@keyhanillc.com
*Attorneys for Plaintiff*
*SWISSDIGITAL USA CO., LTD*

**John P. Palmer**
Naman Howell Smith & Lee
P.O. Box 1470
Waco, TX 76703-1470
(254) 755-4100

**Christine E. Lehman**
Reichman Jorgensen Lehman & Feldberg LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
(202) 894-7311
Fax: (650) 623-1449
Email: clehman@reichmanjorgensen.com
*Attorneys for Defendant*
*WENGER, S.A.*

**Taylor Mauze**
Reichman Jorgensen Lehman & Feldberg LLP
7500 Rialto Boulevard, Suite 250
Austin, TX 78735
(650) 623-5078
Fax: (650) 623-1449
Email: TMauze@reichmanjorgensen.com
*Attorneys for Defendant*
*WENGER, S.A.*

Fax: (254) 754-6331
Email: palmer@namanhowell.com
*Attorneys for Plaintiff*
*SWISSDIGITAL USA CO., LTD*

**John A. Powell**
Naman, Howell, Smith & Lee, PLLC
400 Austin Avenue, Suite 800
P.O. Box 1470
Waco, TX 76701-1470
(254) 755-4100
Fax: 254/754-6331
Email: Powell@namanhowell.com
*Attorneys for Plaintiff*
*SWISSDIGITAL USA CO., LTD*

**Jacqueline P. Altman**
Naman Howell Smith & Lee
400 Austin Avenue, Suite 800
Waco, TX 76701
254-755-4344
Fax: 254-754-6331
Email: jaltman@namanhowell.com
*Attorneys for Plaintiff*
*SWISSDIGITAL USA CO., LTD*